NIAGARA MOHAWK POWER COR-
PORATION, Plaintiff/Counter–
Defendant/Appellant,

v.

TONAWANDA BAND OF SENECA INDI-
ANS, Bernard Parker, Darwin Hill, Ker-
vin Jonathan, James C. Logan, Emerson
Webster, Darren Jimerson, Harley Gor-
don, Roy Poodry, and Frank Abrams,
Defendants–Appellees,

Stonehorse Lone Goeman, Susan LaFrom-
boise, David C. Peters, Peter L. Poodry,
and John A. Redeye, Defendants/Coun-
ter–Claimants/Appellees.

No. 1300, Docket 95–9014.

United States Court of Appeals,
Second Circuit.

Argued May 7, 1996.

Decided Aug. 23, 1996.

---

Mark R. McNamara, Buffalo, New York (Samuel J. Burruano, Jr., Hiscock & Barclay), for plaintiff/counter-defendant/appellant Niagara Mohawk Power Corporation.

Harold M. Halpern, Buffalo, New York (Borins, Halpern, Stromberg & Paskowitz), for defendants-appellees Tonawanda Band of Seneca Indians, Bernard Parker, Darwin Hill, Kervin Jonathan, James Logan, Emerson Webster, Darren Jimerson, Harley Gordon, and Frank Abrams.

Joseph E. Zdarsky, Buffalo, New York (Gerald T. Walsh, Zdarsky, Sawicki & Agostinelli, of counsel), for defendants/counterclaimants/appellees Stonehorse Lone Goeman, Susan LaFromboise, David C. Peters, Peter L. Poodry, and John A. Redeye.

Before: FEINBERG, CABRANES, and PARKER, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Plaintiff Niagara Mohawk Power Company ("Niagara Mohawk"), a public utility corporation organized under New York law, filed this action for declaratory relief on March 3, 1993. The plaintiff is the successor to the rights and obligations of the Niagara, Lockport & Ontario Power Company ("Niagara Lockport") under an April 27, 1936, franchise agreement with the Tonawanda Band of Seneca Indians ("Tonawanda Band"), a federally recognized Indian tribe. The plaintiff claims principally that the traditional governing body of the tribe, the Council of Chiefs, sought in late 1992 to prohibit it from providing new or changed electrical service to, among others, five applicants purportedly "banished" from the tribe. Unable to discern, *inter alia*, (1) whether the 1936 franchise agreement between Niagara Lockport and the Tonawanda Band is valid; and (2) whether the terms of the agreement require it to secure the approval of the Council of Chiefs before granting applications for electrical service, Niagara Mohawk filed suit against the tribe itself, the members of the tribal Council of Chiefs, and the five applicants for electrical service. The applicants asserted a counterclaim against Niagara Mohawk, seeking damages and injunctive relief based on the plaintiff's alleged failure to provide electrical service in a nondiscriminatory manner, as required by § 65(3) of the New York Public Service Law and the terms of its franchise agreement with the band.

Upon the motion of the tribe and members and clerk of the tribal Council of Chiefs, the U.S. District Court for the Western District of New York (Richard J. Arcara, *Judge*) adopted the Report and Recommendation of Magistrate Judge Carol E. Heckman and granted summary judgment dismissing the plaintiff's complaint, concluding that the complaint failed to present a federal question. The court ruled in the alternative that the doctrine of sovereign immunity divested it of subject matter jurisdiction with respect to the plaintiff's claim against the tribe, and that the applicants' counterclaim against Niagara Mohawk must be dismissed under Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to join an indispensable party as required by Rule 19.

We hold that the district court properly determined that neither the complaint nor the counterclaim presents a federal question. In the absence of any other basis for federal subject matter jurisdiction, dismissal of the entire suit was proper, and we need not rule on the alternative ground for the district court's decision. We therefore affirm the district court's judgment insofar as it dismisses the action for lack of a federal question.

## I. FACTS

The Tonawanda Band of Seneca Indians is a federally recognized Indian tribe occupying

a reservation near Akron, New York. On April 27, 1936, the tribe entered into a franchise agreement granting Niagara Lockport and its successors and assigns the right to construct, maintain, and operate electrical lines within the Tonawanda Reservation and to "furnish service to any applicant within said Tonawanda Reservation under the terms and provisions, rules and regulations of the schedules filed with and approved by the Public Service Commission of the State of New York." The plaintiff, a successor to the franchise agreement, claims that, like Niagara Lockport, it has always provided electrical service under the agreement's terms to applicants residing on the Tonawanda Reservation without securing approval of each application for new or changed service from the tribal Council of Chiefs. In late 1991, a political dispute arose on the Tonawanda Reservation. As a result of their role in that dispute, defendants Stonehorse Lone Goeman, Susan LaFromboise, David C. Peters, Peter L. Poodry, and John A. Redeye were served with notices of "banishment" and ordered to leave the reservation in January 1992.[1] All five "banished" individuals, among others, have at some point since January 1992 applied for new or changed electrical service. Niagara Mohawk, however, has refused to act upon their applications based on various letters from the Council of Chiefs and its attorney calling into question Niagara Mohawk's procedures. First, the regional general manager of Niagara Mohawk received a letter dated September 24, 1992, from Bernard Parker, a member and purported chairman of the Council of Chiefs, expressing "concerns regarding utility policies and practices within our territories." The letter stated in part as follows:

We have had a good relationship over the years. Our procedure of approval was followed and ... procedures were worked out to satisfaction.

There is, however, a concern about these recent policy changes regarding application for service and planned changes of power distribution in our territory. Any new utility right of way use, authorized by the [New York Public Service Commis-

sion], might not be legal. As you know, right[s] of way[ ] in Indian territories require approval by the Department of Interior, Bureau of Indian Affairs.

Niagara Mohawk received a second letter, dated December 30, 1992, this time from the attorney for the tribal Council of Chiefs, advising that "[a]ll new or changed customer services require approval of the Council of Chiefs," and seeking copies of all applications for customer service so that the Council could "determine whether or not it grants its approval for such applications." In a letter dated February 1, 1993, following a meeting with Niagara Mohawk's General Counsel, the tribe's attorney called to Niagara Mohawk's attention certain provisions of the franchise agreement requiring the utility company to secure the approval of record owners of allotted lands on the reservation prior to constructing electrical lines in front of such lands. According to that letter, Niagara Mohawk had failed to ascertain which, if any, applicants were record owners able to grant approval.

Since receiving this correspondence, Niagara Mohawk has apparently refused to grant any application for new or changed electrical service, but has maintained existing service on the reservation. Niagara Mohawk filed this suit for declaratory relief in March 1993, claiming that its correspondence with the tribal Council of Chiefs called into question both the validity of Niagara Mohawk's franchise agreement with the band and Niagara Mohawk's obligation to provide new or changed service to applicants on the reservation without securing prior approval of the Council of Chiefs. The company named as defendants the tribe, the members and clerk of the Council, and the five "banished" individuals, who had apparently threatened legal action against Niagara Mohawk for its alleged failure to adhere to the terms of its franchise agreement with the tribe.

The tribe and the members and clerk of the Council of Chiefs filed an answer on April 20, 1993, asserting, *inter alia*, that the tribe and its officials were immune from suit and

---

**1.** The circumstances surrounding the issuance of the orders of banishment are set forth in greater detail in *Poodry v. Tonawanda Band of Seneca Indians,* 85 F.3d 874 (2d Cir.1996).

that the tribe was an indispensable party under Rule 19(b) of the Federal Rules of Civil Procedure, in whose absence the suit could not proceed. The individual applicants filed an answer on May 5, 1993, and asserted a counterclaim, alleging that Niagara Mohawk had failed to comply with the terms of the franchise agreement and with § 65(3) of the New York Public Service Law [2] by refusing to grant their requests for electrical service. On August 11, 1993, another individual residing on the Tonawanda Reservation, Neville Spring, filed a motion to intervene, claiming that Niagara Mohawk had ceased work on relocating utility poles and power lines on his property after being informed that such work would require the approval of the Council of Chiefs.

Pursuant to 28 U.S.C. § 636(b)(1), the district court referred the case to Magistrate Judge Heckman. On August 2, 1993, the tribe and the members and clerk of the tribal Council of Chiefs (together, the "moving defendants") filed a motion for summary judgment, claiming that the district court lacked subject matter jurisdiction over the suit. In a Report and Recommendation filed November 22, 1993, Magistrate Judge Heckman recommended dismissal of the complaint and counterclaim on two independent grounds. First, she concluded that federal question jurisdiction was lacking as to Niagara Mohawk's claim, because the only question to be resolved was how the franchise agreement between Niagara Lockport and the tribe should be interpreted—a matter of state law. Similarly, because the counterclaim raised only Niagara Mohawk's alleged breach of the franchise agreement, there was no independent basis for subject matter jurisdiction over the counterclaim. Second, the magistrate judge concluded that the doctrine of sovereign immunity barred Niagara Mohawk's suit against the tribe and that subject matter jurisdiction was therefore lacking as to that defendant. The magistrate judge further concluded that the tribe was an indispensable party, under Rule 19(b) of the Federal Rules of Civil Procedure, to the appli-

cants' counterclaim against Niagara Mohawk, and that dismissal of the counterclaim for failure to join an indispensable party was required. The plaintiff and the non-moving defendants filed objections to the magistrate judge's recommended ruling. By a Decision and Order filed August 4, 1994, the district court adopted the magistrate judge's ruling in full. The court thereafter entered judgment dismissing both Niagara Mohawk's claims and the applicants' counterclaim. This appeal followed.

## II. DISCUSSION

■ We review *de novo* the district court's determination that it is without subject matter jurisdiction over this action. *See Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996). On appeal, the plaintiff claims principally that: (1) the district court erred in concluding that federal question jurisdiction was lacking, inasmuch as the defendant members of the Council of Chiefs, in seeking to prevent the plaintiff from providing electrical service to the individual applicants, raised the question of whether Niagara Mohawk's franchise agreement with the tribe is valid under federal law; (2) the district court erred in concluding that the doctrine of sovereign immunity barred suit against the tribe, because the tribe waived its sovereign immunity by appearing before the New York Public Service Commission and New York courts in connection with the approval of the franchise agreement; (3) the defendant members of the tribal Council of Chiefs cannot claim sovereign immunity, because the Council's efforts to prevent Niagara Mohawk from providing electrical service were outside of the lawful authority of the tribe; and (4) the tribe is not an indispensable party to the applicants' counterclaim against Niagara Mohawk.

Because we find that federal question jurisdiction is lacking, and the plaintiff advances no other basis for the exercise of subject matter jurisdiction, we conclude that the district court properly dismissed both the com-

---

**2.** N.Y. PUB. SERV. L. § 65(3) (McKinney 1989) provides, in pertinent part, that "[n]o ... electric corporation ... shall ... subject any particular person, corporation or locality or any particular description of service to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

plaint and counterclaim. We therefore need not address whether the moving defendants are immune from suit, or whether the tribe is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. We reject the applicants' invitation to vacate the district court's decision insofar as it reaches issues of immunity and Rule 19 indispensability because that portion of Judge Arcara's decision will have no preclusive effect over any subsequent, state court litigation involving the issues presented in the instant action.

## A. Federal Question Jurisdiction

■ Niagara Mohawk's complaint seeks declaratory relief under 28 U.S.C. § 2201(a), which provides in pertinent part as follows:

In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

Section 2201 provides no independent basis for subject matter jurisdiction. See, e.g., Albradco, Inc. v. Bevona, 982 F.2d 82, 85 (2d Cir.1992). Accordingly, the plaintiff asserts federal question jurisdiction under 28 U.S.C. § 1331, alleging that the validity of its franchise agreement with the tribe has been called into question by the Council of Chiefs and that the question of the agreement's validity can only be resolved through the application of federal Indian law. In particular, Niagara Mohawk alleges that Chief Parker's letter of September 22, 1992 questioned the validity of the franchise agreement under the Indian Nonintercourse Act of 1790, ch. 33, § 4, 1 Stat. 137 (codified at 25 U.S.C. § 177), which requires formal governmental and tribal approval of contracts with Indians for the "purchase, grant, lease, or other conveyance of lands."

■ In order to find that the plaintiff's Nonintercourse Act claim presents a federal question sufficient to confer federal question jurisdiction under § 1331, however, we must first ascertain that there is in fact a live controversy over the validity of the franchise agreement. The Declaratory Judgement Act permits declaratory relief only in cases presenting "actual controvers[ies]," 28 U.S.C. § 2201(a), a requirement that incorporates into the statute the case or controversy limitation on federal jurisdiction found in Article III of the Constitution. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239–40, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). For a court to have subject matter jurisdiction over a declaratory judgment action, there must be " 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 17 (2d Cir.1993) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)) (emphasis supplied by Olin court). If the parties to the instant case have no "substantial" disagreement over the validity of the franchise agreement under the Nonintercourse Act, this issue cannot serve as the basis for federal jurisdiction over the plaintiff's declaratory judgment action. Compare Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1170 (3d Cir.1987) (finding no federal jurisdiction over declaratory judgment claim where letter from defendant cable company could be construed to establish that defendant did not take legal position at odds with plaintiff's interpretation of federal statute) with Aetna Life Ins. Co., 300 U.S. at 242, 57 S.Ct. at 464–65 (finding controversy where, "[p]rior to th[e] suit, the parties had taken adverse positions with respect to their existing obligations") and Fusco v. Rome Cable Corp., 859 F.Supp. 624, 631–33 (N.D.N.Y.1994) (finding actual controversy where declaratory defendant categorically rejected plaintiff's claim in pleadings).

■ The district court found that there is presently no such substantial controversy between or among the parties to this suit concerning the validity of the franchise agreement under the Nonintercourse Act. Magistrate Judge Heckman, in a Report and Recommendation adopted in full by Judge Arcara, observed that "Niagara Mohawk ... strenuously maintained throughout the proceedings that the validity of the franchise [agreement] is not disputed," and concluded that the plaintiff's attempt to invoke federal

Indian law failed to "create a controversy" regarding the franchise agreement's validity under these statutes. With respect to the plaintiff's Nonintercourse Act claim specifically, the Report and Recommendation noted that "no allegation or argument has been made *by any of the parties* that the rights-of-way created by the franchise agreement somehow violate the Non–Intercourse Act." (Emphasis supplied.)

The original pleadings in this action are consistent with the district court's conclusion that there is currently no controversy over the validity of the franchise agreement. In its answer, the defendant tribe categorically denied allegations in Niagara Mohawk's complaint that, "[i]n light of developing case law interpreting the Non–Intercourse Act ..., counsel for the Tonawanda Band and Parker have ... called into question the validity of the easements given in the Franchise [Agreement];" that "[t]he actions and representations of the defendants ... have created a question as to the validity of the Franchise [Agreement];" or that "the issue of the validity of the Franchise Agreement is unresolved pending the resolution of the issue of federal approval of the Tonawanda Band's actions." In fact, the plaintiff has itself repeatedly cited these denials in the tribe's pleadings as evidence that "the Tribe concedes the validity of the Franchise [Agreement]." Appellant's Brief at 17; *see also id.* at 27 ("Happily ... there is no issue with respect to the validity of the Franchise [Agreement].... [B]oth Niagara Mohawk and the Tribe have agreed that the Franchise [Agreement] is valid....").

In light of the pleadings and the plaintiff's own contention on appeal that there is no dispute over the validity of the franchise agreement, we agree with the district court that there is nothing to suggest a live controversy between or among the parties to this action over the validity of the franchise agreement under the Nonintercourse Act. Accordingly, we have no jurisdiction to determine the legality of the franchise agreement on the theory that this issue may be in dispute.

■ Moreover, like other courts to consider the question, we reject the proposition that statutory requirements governing federal approval of certain contracts between Indians and non-Indians give rise to a federal common law governing such contracts. *See Gila River Indian Community v. Henningson, Durham & Richardson,* 626 F.2d 708, 714–15 (9th Cir.1980), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1983, 68 L.Ed.2d 301 (1981); *see also Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians,* 999 F.2d 503, 507 (11th Cir.1993) (finding federal question jurisdiction lacking where plaintiff asserted jurisdiction under 28 U.S.C. § 1331 but "present[ed] facts establishing a breach of contract claim"). What remains of the plaintiff's complaint without the issue of the franchise agreement's validity—the request for judicial determination of Niagara Mohawk's obligations under the terms of the franchise agreement—is a cause of action sounding in contract that arises solely under state law.

## B. *Counterclaim of Applicants for Electrical Service*

■ Where a court dismisses an action for lack of federal subject matter jurisdiction, it may nonetheless adjudicate a counterclaim presenting an independent basis for federal jurisdiction. *See Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 477 F.Supp. 615, 621 (S.D.N.Y.1979), *modified on other grounds,* 629 F.2d 786 (2d Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981); 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1414 n. 31 (2d ed.1990) (citing cases). Notwithstanding the fact that appellant Niagara Mohawk's interests are adverse to those of the individual applicants, it appears to press the argument on appeal that the applicants' counterclaim was improperly dismissed. On its face, however, the applicants' counterclaim presents no independent basis for federal jurisdiction, and the plaintiff identifies none. The applicants claim merely that Niagara Mohawk has failed to provide electrical service in accordance with the terms of the franchise agreement and with New York law. Neither the former allegation, which sounds in contract law, nor the latter, invoking a New York

statute, provides a basis for federal jurisdiction.

### C. Sovereign Immunity and Failure to Join an Indispensable Party

The district court determined that sovereign immunity barred the plaintiff's suit against the tribe and the Council of Chiefs. It then found that, because the tribe is an indispensable party, neither the declaratory suit nor the counterclaim could proceed. Because we find that both Niagara's claim and the applicant's counterclaim fail to raise a federal question, we need not reach the issues of the moving defendants' immunity or whether the tribe is an indispensable party. However, the individual applicants urge on appeal that, having disposed of their counterclaim as well as Niagara's claim for lack of a federal question, we should vacate this alternative basis of the district court's decision. To leave this portion of the district court's opinion intact, the applicants contend, would be to "improperly impinge[ ] on the rights of state courts of competent jurisdiction to determine disputes not subject to the jurisdiction of the federal courts." See Non–Moving Appellees' Brief at 6.

Federal law determines whether, and to what extent, our holding will have a preclusive effect in a subsequent, state court adjudication of the issues currently before us. Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 41–42 (2d Cir.1986) ("A state court must apply federal law to determine the preclusive effect of a prior federal question judgment."), cert. denied, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987); see Jerome J. Steiker Co. v. Eccelston Properties Ltd., 156 Misc.2d 308, 593 N.Y.S.2d 394, 398 (N.Y.Sup.Ct.1992); Peros v. Cia De Nav Mar Netumar, 75 Misc.2d 913, 349 N.Y.S.2d 926, 927 (N.Y.City Civ.Ct.1973). It is a well-established principle of federal law that if an appellate court considers only one of a lower court's alternative bases for its holding, affirming the judgment without reaching the alternative bases, only the basis that is actually considered can have any preclusive effect in subsequent litigation. See Gelb, 798 F.2d at 45 ("[I]f an appeal is taken [from a decision on alternative grounds] and the appellate court affirms

on one ground and disregards the other, there is no collateral estoppel as to the unreviewed ground." Quoted in Greene v. United States, 79 F.3d 1348, 1352 (2d Cir.1996)); Hicks v. Quaker Oats Co., 662 F.2d 1158, 1168 & n. 6 (5th Cir.1981) (citing cases for "general rule" that "if a judgment is appealed, collateral estoppel only works as to those issues specifically passed upon by the appellate court"); Moran Towing & Transp. Co. v. Navigazione Libera Triestina, S.A., 92 F.2d 37, 40–41 (2d Cir.) (finding no res judicata effect from alternative holding not reviewed on appeal), cert. denied, 302 U.S. 744, 58 S.Ct. 145, 82 L.Ed. 575 (1937); RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. o (1980). Because we do not pass on the alternative basis for the district court's holding in this action, that portion of the holding will have no preclusive effect in any subsequent, state court proceeding. Accordingly, we decline the applicants' request to vacate the alternative basis for the district court's judgment below.

### CONCLUSION

1. The district court correctly found that neither the appellant's claim nor the individual applicants' counterclaim raised a federal question and that there is therefore no federal jurisdiction in this action;

a. There is at present no "actual controversy" over the validity of the franchise agreement under federal Indian law, and;

b. The plaintiff's remaining claim and the applicants' counterclaim sound in contract and state statutory law, and accordingly provide no basis for federal question jurisdiction.

2. We need not address the alternative basis for the district court's decision.

The judgment of the district court dismissing the plaintiff's complaint and the individual applicants' counterclaim is affirmed.