**GLAXO GROUP LIMITED, et al., Plaintiffs,**

v.

**DR. REDDY'S LABORATORIES, LTD., et al., Defendants.**

**Dr. Reddy's Laboratories, Ltd., et al., Counterclaim Plaintiffs,**

v.

**Glaxo Group Limited, et al., Counterclaim Defendants.**

**Nos. Civ.01–4066, Civ.03–1921, Civ.03–3340 JLL.**

United States District Court, D. New Jersey.

May 28, 2004.

Arnold B. Calmann, Saiber, Schlesinger, Satz & Goldstein, Esqs., Newark, NJ, for Plaintiffs and Counter Defendant.

Robert J. Kipnees, Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, LLP, Iselin, NJ, for Intervenor Plaintiff.

Andrew J. Miller, Stuart D. Sender, Budd Larner, P.C., Short Hills, NJ, for

Defendants, Consol Defendant, and Counter Claimant.

Vijayant Pawar, Budd Larner, P.C., Short Hills, NJ, for Consol Defendant and Defendant.

## OPINION & ORDER

LINARES, District Judge.

This matter comes before the Court on the objection of Kali Pharmaceuticals ("Kali") to the entry of a stipulation of partial dismissal on certain claims between Plaintiffs/Counterclaim Defendants Glaxo Group Limited and Smithkline Beecham Corporation, (collectively, "Glaxo") and Defendant/Counterclaim Plaintiff Dr. Reddy's Laboratories, Ltd. ("Reddy") pursuant to Fed.R.Civ.P. 41(c). For the reasons stated herein, the Court finds that it lacks subject matter jurisdiction over the particular dispute and therefore dismisses Reddy's claim without prejudice, without findings of fact, and without reference to any underlying documentation between the parties.

### Statement of the Case

As the Court writes only for the parties, a familiarity with the underlying facts in this case will be assumed. On July 14, 2003, Glaxo filed a civil action against Reddy seeking a determination that Defendants have infringed U.S. Patents Nos. 4,695,578; 4,753,789; and 5,578,628, as well as seeking certain injunctive relief. On September 10, 2003, Dr. Reddy filed a declaratory judgment counterclaim of non-infringement with respect to U.S. Patents Nos. 5,955,488 and 6,063,802 (the "Winterborn patents"), respectively entitled "Freeze Dried Compositions" and "Ondansetron Freeze-Dried Dosage Form Compositions for Oral Administration." Glaxo then filed a reply on October 2, 2003 in which it denied subject matter jurisdiction due to the absence of an actual controversy between the parties concerning the Winterborn patents.

Since that time, Glaxo and Reddy have voluntarily agreed to partially dismiss Defendant's counterclaim for declaratory judgment with respect to the Winterborn patents with prejudice for lack of subject matter jurisdiction. They ask the Court to adopt a dismissal order that incorporates by reference their Stipulation of Partial Dismissal and a Covenant Not to Sue and Stipulation of Non-Infringement.

Kali Pharmaceuticals, the first-to-file an Abbreviated New Drug Application ("ANDA") for ondansetron ODT, then moved to intervene because it objected to the form of this dismissal. Kali alleges that the execution of a court order as requested would improperly dismiss a portion of the present declaratory judgment action with prejudice and would provide judicial sanction of an out-of-court settlement agreement between private parties even though the Court lacks subject matter jurisdiction over the matter. As such, Kali contends the Court should dismiss Reddy's counterclaim without prejudice and without making any substantive findings of fact. Kali also argues that adoption of the dismissal as requested by the current litigants would unfairly deprive it of its 180-day exclusivity period by creating a judicial trigger. On January 12, 2004, Magistrate Judge Ronald Hedges granted Kali the right to comment on the dismissal before this Court on these grounds: (1) whether Defendant's declaratory judgment action should be dismissed with or without prejudice; and (2) whether the covenant not to sue that is attached to the stipulation should be referred to in the dismissal order.

### Legal Background

#### A. Drug Patents

In 1984, Congress enacted the Hatch-Waxman Amendments ("the Amendments") to the Federal Food, Drug and Cosmetic Act ("FFDCA"), which simplified

the process for FDA approval of generic drugs. *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1063 (D.C.Cir.1998). Under the Amendments, applicants who wanted to market generic versions of pioneer drugs could file an ANDA, which relied on the FDA's previous determination that the pioneer drug is safe and effective. *Id.* One requirement of the ANDA is that for each patent applicable to the pioneer drug, the ANDA applicant must certify whether the generic drug would infringe that patent, and if not, the reasons why it would not. *Id.* To satisfy this requirement, an ANDA applicant may certify that (I) the required patent information has not been filed, (II) the patent has expired, (III) the patent has not expired, but will expire on a particular date, or (IV) that the patent is invalid or will not be infringed by the drug for which the ANDA applicant seeks approval. 21 U.S.C. § 355(j)(2)(A)(vii). If an ANDA applicant makes a certification under clause IV (commonly referred to as a "paragraph IV certification") and the pioneer patent holder brings suit within 45 days, the FDA must delay its approval of the ANDA until the earlier of 30 months or the date of a court decision finding the patent invalid or not infringed. 21 U.S.C. § 355(j)(5)(B)(iii); *Id.* at 1064.

The first applicant to file an ANDA containing a paragraph IV certification is known as a "first filer" and is eligible for a 180–day exclusivity period during which it is entitled to have the sole generic version of the pioneer drug on the market. 21 U.S.C. § 355(j)(5)(B)(iv). This exclusivity period is calculated from the earlier of: 1) the date of the first commercial marketing of the generic drug by the first filer; or 2) the date of a court decision declaring the patent at issue invalid or not infringed. 21 U.S.C. § 355(j)(5)(B)(iv). Any subsequent ANDA filer must wait until the expiration of the first filer's 180–day exclusivity peri-

od before receiving FDA approval of its ANDA. *Id.*

### B. *Declaratory Judgment Act*

■ Under the Declaratory Judgment Act, a court may declare the rights and other legal relations of any interested party where there exists an "actual controversy," defined as "a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 28 U.S.C. § 2201(a); *Md. Cas., Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *Mova Pharm.,* 140 F.3d at 1073. Even if such a controversy exists, however, a district court has broad discretion to withhold declaratory judgment. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (noting "the unique breadth of [a district court's] discretion to decline to enter a declaratory judgment"); *Jackson v. Culinary Sch. of Wash., Ltd.,* 59 F.3d 254, 256 (D.C.Cir.1995) (stating that the Supreme Court "took great pains to emphasize the singular breadth of the district court's discretion to withhold declaratory judgment").

■ A plaintiff seeking declaratory judgment for patent infringement must satisfy a two-pronged test to demonstrate that an actual controversy exists for purposes of subject-matter jurisdiction. *Dupont Merck Pharm. Co., v. Bristol–Myers Squibb Co.,* 62 F.3d 1397, 1401 (Fed.Cir. 1995). For an actual controversy to exist, "[t]here must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Amana Refrigeration, Inc. v. Quadlux, Inc.,* 172 F.3d 852, 855 (Fed.Cir.1999) (internal quotation omitted); *accord Sigma–Tau Indus-*

*trie Farmaceutiche Riunite, S.p.A. v. Lonza, Ltd.,* 36 F.Supp.2d 26, 30 (D.D.C.1999). Without an explicit threat of action by the patentee, a declaratory judgment requires a showing that the patentee's conduct "rises to a level sufficient to indicate an intent to enforce its patent, i.e. to initiate an infringement. action." *EMC v. Norand Corp.,* 89 F.3d 807, 811 (Fed.Cir.1996). The burden rests on the party requesting declaratory judgment "to establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [claim] was filed." *Sierra Applied Sciences, Inc. v. Advanced Energy Indus.,* 363 F.3d 1361, 1373 (Fed.Cir.2004) (citing *Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enter., Holdings, Inc.,* 787 F.2d 572, 575 (Fed.Cir.1986)). Overall, an actual controversy must be established based on the "totality of the circumstances." *Super Sack Mfg. Corp. v. Chase Packaging Corp.,* 57 F.3d 1054, 1058 (Fed. Cir.1995).

## C. Federal Rules of Civil Procedure

The parties request this dismissal pursuant to Rule 41(c) of the Federal Rules of Civil Procedure. However, this provision alone does not fully address the issue, as 41(c) states only that Rule 41 applies not only to the dismissal of a plaintiff's claims, but also to the dismissal of counterclaims, cross-claims, and third-party claims. Moreover, Rule 41(a)(1), allowing for dismissal of an action without a court order, cannot apply because Plaintiff has already filed an answer to Defendant's counterclaim. The clause of Rule 41 that substantively governs the present situation can be found in Rule 41(a)(2), as applied to a counterclaim by way of Rule 41(c). Rule

41(a)(2) states in pertinent part that "an action shall not be dismissed at the [party's] instance save upon order of the court and upon *such terms and conditions as the court deems proper."* (emphasis added). The Court therefore can use its discretion under Rule 41(a)(2) and Rule 41(c) to decide the proper "terms and conditions" of the stipulation.

### Legal Discussion

■ As previously stated, for an "actual controversy" to exist in this context, there must be both: (1) an action by the patentee that creates a reasonable apprehension on the part of the moving party that it will face an infringement suit; and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity. *Amana Refrigeration, Inc. v. Quadlux, Inc.,* 172 F.3d 852, 855 (Fed.Cir.1999). The parties do not dispute that the submission of an ANDA application is considered "present activity constituting infringement." 35 U.S.C. § 271(e)(2); *Dr. Reddy's v. Pfizer, Inc.,* 2003 WL 21638254, *5 (D.N.J. July 8, 2003). Therefore, Reddy's claim meets the second prong of the actual controversy determination. However, the Court must determine whether Glaxo has created an "objectively reasonable apprehension" that Reddy will face an infringement suit on the Winterborn patents. Upon reviewing the facts in this case and the submissions of the parties, the Court does not believe that Reddy faced an "objectively reasonable apprehension" of suit over these patents. The need for "judicial attention" on these patents is "prospective and uncertain of occurrence" rather than "real and immediate." *BP Chems. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed.Cir.1993).[1] As

---

1. The Court will not attempt to ascertain the particular motives of Reddy for asking for a dismissal in this particular form. The Court notes that it is certainly possible, as Kali claims, that Reddy's underlying intentions are to create a preclusive court decision that may

eventually be considered a "court decision" by the FDA so as to prematurely start Kali's 180-day exclusivity period before Kali can make use of it. Even if Reddy were attempting to create such a "judicial trigger," there is

such, no actual controversy exists over this claim.

The discussion in *Dr. Reddy's v. Pfizer, Inc.*, 2003 WL 21638254 (D.N.J. July 8, 2003) is instructive in the resolution of this matter. In that case, Reddy filed a declaratory judgment action to have a particular patent held by Pfizer declared non-infringed or invalid. The *Pfizer* court dismissed the case for lack of subject matter jurisdiction because Reddy had no reasonable apprehension of litigation. More importantly, the court addressed and rejected many of the same arguments Reddy presently makes in support of subject matter jurisdiction. The Court does not find the *Pfizer* case distinguishable based on the remoteness of time in which the generic product would be launched. Although Reddy may be closer to launching its generic product in the case at bar than in the *Pfizer* case, it remains unclear when the FDA will approve the generic drug. As the Court has not been shown that this approval is in anyway imminent, Reddy's arguments for distinguishing *Pfizer* are persuasive.

Just as the court found in *Pfizer*, the Court does not believe that Glaxo's filing of the NDA and listing of the patent in the Orange Book speaks to the actual controversy resolution. *See also Teva Pharm. v. Pfizer Inc.*, 2003 WL 22888848, at *4 (D.Mass. Dec.8, 2003) (rejecting argument that listing patent in Orange Book amounts to a patentee's declaration of its intention to sue). In addition, the fact that Glaxo has previously exhibited litigious tendencies with respect to other patents does not produce a reasonable apprehension of litigation in this case, especially in light of Glaxo's failure to sue Reddy within the statutory 45 day period after its

ANDA filing notice. *See, e.g., Teva Pharm.*, 2003 WL 22888848, at *4; *Pfizer*, 2003 WL 21638254, at *7. As far as this Court can ascertain, Glaxo has never sued any of the generic companies on the Winterborn patents. In fact, Glaxo filed suit in the present action on all the listed patents except the Winterborn patents. Moreover, simply because Glaxo refused to enter into a covenant not to sue with Reddy does not definitively prove the existence of an actual controversy. *Teva Pharm.*, 2003 WL 22888848, at *4 (noting that "there is nothing in the FFDCA that requires Pfizer to respond one way or another to Teva's request for a covenant not to sue"). *See also Pfizer*, 2003 WL 21638254, at *6; *BP Chems. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed.Cir.1993).

In support of its claim, Reddy points to recent legislative amendments to the Hatch–Waxman Act regarding declaratory judgment actions brought by an ANDA filer, and argues that they mandate the finding of an actual controversy under the present circumstances. These changes, embodied in 35 U.S.C. § 271(e)(5), provide:

> Where a person has filed an application described in paragraph (2) that includes a certification under subsection (b)(2)(A)(iv) or (j)(2)(A)(vii)(IV) of section 505 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355), and neither the owner of the patent that is the subject of the certification nor the holder of the approved application under subsection (b) of such section for the drug that is claimed by the patent or a use of which is claimed by the patent brought an action for infringement of such patent before the expiration of 45 days after the date on which the notice

nothing inherently insidious about a second ANDA filer using a declaratory judgment action to trigger the first ANDA filer's 180–day exclusivity period. *See, e.g., Minnesota Min-*

*ing*, 289 F.3d at 781, n. 3; *Teva Pharmaceuticals v. FDA*, 182 F.3d 1003, 1009 (D.C.Cir. 1999); *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060 (D.C.Cir.1998).

given under subsection (b)(3) or (j)(2)(B) of such section was received, the courts of the United States shall, *to the extent consistent with the Constitution,* have subject matter jurisdiction in any action brought by such person under section 2201 of title 28 for a declaratory judgment that such patent is invalid or not infringed.

35 U.S.C. § 271(e)(5) (emphasis added).

 The plain meaning of this language demonstrates that constitutional "case and controversy" requirements must still be met to have subject matter jurisdiction under the Declaratory Judgment Act. If Congress had wished to modify the standards under which the courts have addressed the controversy requirement in patent cases, the Court believes it would have done so in a more direct fashion and without these limiting words. Looking beyond the statutory language, Reddy argues that the intent of this provision was to provide that the case and controversy requirement is met whenever an ANDA filer is not sued within the 45 day period for infringement. *See Minnesota Mining & Manufacturing Co. v. Barr Labs.,* 289 F.3d 775, 791 (Fed.Cir.2002) (Gajarsa, J., concurring opinion). Whereas certain isolated legislative statements lend some support to this interpretation, the Court finds the more telling indication of congressional intent to be the statements made by the joint conference of House and Senate members. They noted that the fact that an ANDA has been filed and no infringement suit filed was not dispositive, but such actions must be considered among the "totality of circumstances." *Joint Explanatory Statement,* Conference Agreement for H.R. 1, Provisions Related to Hatch–Waxman (November 21, 2003), 386 ("In any given case, the conferees expect a court *may or may not* find a reasonable apprehension of suit where these two specific factors are present."). Therefore, the Court is persuaded by this legislative his-

tory that expressly rejects Dr. Reddy's interpretation of § 271(e)(5) and preserves the "reasonable apprehension" test.

Because there is no objectively "reasonable apprehension" of suit, there is no actual case or controversy. Therefore, the Court does not have subject matter jurisdiction over this claim. Reddy cites to *Kokkonen v. Guardian Life Ins. Co.,* for the proposition that parties have the right to incorporate additional stipulations in the dismissal order as a means of preserving the court's jurisdiction to enforce the agreement in case of subsequent breach. 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). However, nowhere in that decision does it say that a court *must* allow such an incorporation. In fact, the *Kokkonen* Court noted that when the dismissal is pursuant to Federal Rule of Civil Procedure 41(a)(2), as in the case at bar, "the parties' compliance with the terms of the settlement contract ... *may, in the court's discretion,* be one of the terms set forth in the order." *Id.* at 381, 114 S.Ct. 1673 (emphasis added). Even if the parties had brought this dismissal under Rule 41(a)(1)(ii), the *Kokkonen* court only stated that the court is "authorized" to embody the settlement contract in its dismissal order. *Id.* at 382, 114 S.Ct. 1673. Nowhere is this made a requirement. *See also Wright v. Prudential Ins. Co. of America,* 285 F.Supp.2d 515, 522, n. 17 (D.N.J.2003). ("The exercise of such jurisdiction to enforce its own order is discretionary; the court was under no obligation to reserve it in the first place"). The Court therefore exercises its discretion and declines the invitation to place the judicial stamp of authority on whatever private arrangements have been made between the parties.

 The Court believes that the facts of this case require it to dismiss Defendant's counterclaim without prejudice. As dis-

missal for lack of subject matter jurisdiction is not an adjudication on the merits, dismissal without prejudice is proper. *See, e.g., American Canoe Assn., Inc. v. EPA,* 289 F.3d 509, 513 (8th Cir.2002); *In re Hall, Bayoutree Assoc., Ltd.,* 939 F.2d 802, 804 (9th Cir.1991); *Martinez v. Richardson,* 472 F.2d 1121, 1126 (10th Cir.1973); *Dr. Reddy's v. Pfizer, Inc.,* 2003 WL 21638254, at *8 (dismissing case without prejudice when no reasonable apprehension of litigation); *Grabow v. Southern State Correctional Facility* 726 F.Supp. 537, 539 (D.N.J.1989) ("the court will dismiss without prejudice the complaint for lack of subject matter jurisdiction under the eleventh amendment"). Although Reddy argues that dismissal with prejudice is justified because the covenant not to sue made by Glaxo precludes any further litigation on this claim, as previously mentioned, the Court refrains from incorporating the stipulation into the dismissal. As the Court does not adopt any findings of fact or stipulations, from the Court's perspective, it remains possible that suit could still be brought on these patents. If any private agreement made between the parties precluding suit is ever violated, it can be addressed and remedied in a breach of contract action.

Due to the lack of subject matter jurisdiction in this case as well as the underlying factual circumstances, the Court exercises its discretion under Fed.R.Civ.P. 41 to modify the "terms and conditions" of the order requested by Glaxo and Reddy. Therefore, the Court will dismiss Reddy's allegations with respect to the Winterborn patents without prejudice, without making any substantive findings of fact, without adopting a stipulation agreement that makes findings of fact, and without any preclusive effect.

### Conclusion

For the reasons stated herein, IT IS on this 28th day of May, 2004, hereby,

ORDERED that Defendant's counterclaim with respect to the Declaratory Judgment of Non–Infringement of U.S. Patents Nos. 5,955,448 and 6,063,802 is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.