APOTEX, INC and Apotex
Corp., Plaintiffs,

v.

PFIZER INC., Defendant.

No. 04 Civ. 2539(DC).

United States District Court,
S.D. New York.

Jan. 3, 2005.

Rakoczy Molino Mazzochi Siwik LLP, By: William A. Rakoczy, Deanne M. Mazzochi, Amy D. Brody, Chicago, Illinois, for Plaintiffs.

White & Case LLP, By: Dimitrios T. Drivas, Jeffrey J. Oelke, Brendan G. Woodward, New York, New York, for Defendant.

## MEMORANDUM DECISION

CHIN, District Judge.

In this patent case, plaintiffs Apotex, Inc. and Apotex Corp. (together, "Apotex") bring a declaratory judgment action for a determination that their generic drug does not infringe U.S. Patent No. 5,248,699 ("the '699 patent"), held by defendant Pfizer Inc. ("Pfizer"). Pfizer moves to dismiss the action, arguing that the Court lacks subject matter jurisdiction because of the absence of an actual controversy between the parties. For the reasons that follow, the motion is granted and the complaint is dismissed, without prejudice.

## BACKGROUND

### A. Regulatory Background

#### 1. Hatch–Waxman Amendments

This dispute arises under a series of amendments to the Federal Food, Drug, and Cosmetic Act of 1938 (the "FDCA"), 21 U.S.C. § 1 *et seq.* The "Hatch–Waxman Amendments," enacted as the Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. No. 98–417, 98 Stat. 1585 (1984), simplified Food and Drug Administration ("FDA") procedures for the approval of generic drugs. *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1063 (D.C.Cir.1998). Under the Hatch–Waxman Amendments, companies that want to market generic versions of pioneer drugs may file with the FDA an Abbreviated New Drug Application ("ANDA"), relying on the FDA's prior determinations that the pioneer drug was safe and effective. *See* 21 U.S.C. § 355(j)(2)(A); *see generally Andrx Pharms., Inc. v. Biovail Corp.,* 276 F.3d 1368, 1371 (Fed.Cir.2002); *Mylan Pharms., Inc. v. Thompson,* 268 F.3d 1323, 1325–27 (Fed.Cir.2001); *Glaxo Group Ltd. v. Dr. Reddy's Labs., Ltd.,* 325 F.Supp.2d 502 (D.N.J.2004).

A pioneer drug manufacturer is required to notify the FDA of all patents that cover the pioneer drug. 21 U.S.C. § 355(b)(1), (c)(2). These patents and their expiration dates are listed by the FDA in what is commonly known as the "Orange Book"— the "Approved Drug Products With Therapeutic Equivalence Evaluations." For all applicable patents listed in the Orange Book, ANDA applicants must certify whether the generic drug would infringe the patents. 21 U.S.C. § 355(j)(2)(A)(vii). Specifically, the ANDA applicant may certify that (I) the required patent information has not been submitted to the FDA; (II) the patent has expired; (III) the patent has not expired but is set to expire on a certain date; or (IV) the patent is invalid or will not be infringed by the new generic drug for which the ANDA is submitted. 21 U.S.C. § 355(j)(2)(A)(vii)(I-IV). These are commonly referred to as paragraph I, II, III, and IV certifications. *See generally Andrx Pharms., Inc.,* 276 F.3d at 1371.

If an ANDA applicant makes a paragraph IV certification and the patent holder (the pioneer drug company) sues for patent infringement within forty-five days, the FDA may not approve the ANDA until expiration of the patent, a judicial determination that the patent is invalid or not infringed, or thirty months, whichever is earlier. If the patentee does not sue, the ANDA will be approved. 21 U.S.C. § 355(j)(2)(B)(I), (5)(B)(iii); 21 C.F.R. § 314.95(c)(6).

The first applicant to file an ANDA with a paragraph IV certification is a "first filer," and is eligible for a 180–day exclusivity period during which it is entitled to have the sole generic version of the pioneer drug on the market. 21 U.S.C. § 355(j)(5)(B)(iv). The FDA is prohibited from approving any other ANDA involving the same brand name drug until the end of the exclusivity period, *i.e.,* during that period only the brand name manufacturer and the first filer may market that drug. *Id.* The marketing exclusivity period does not begin immediately upon FDA approval of the first ANDA, but rather upon the earlier of (1) the first commercial marketing of the drug, or (2) the date of a court decision declaring the patent invalid or not infringed. *Id.*

While the Hatch–Waxman framework "has saved billions and billions of dollars for consumers[,] ... there [has been] a gaming of the system" by some brand name drug companies. 149 Cong. Rec. S15563 (daily ed. Nov. 22, 2003) (statement of Sen. Hatch); *see* Congressional Budget Office, "How Increased Competition from Generic Drugs Has Affected Prices and Returns in the Pharmaceutical

Industry," 27–31 (July 1998). Some brand name drug manufacturers have succeeded in "parking" the 180–day marketing exclusivity period, indefinitely delaying ANDA approvals and bottlenecking the market. Federal Trade Commission, "Generic Drug Entry Prior to Patent Expiration," vi-vii (July 2002). "Parking" occurs when the brand name manufacturer convinces the first filer not to enter the market, often through a settlement agreement concluding a patent infringement suit. *Id.* Absent an intervening court decision, the first filer's failure to enter the market delays the triggering of the 180–day exclusivity period so that it neither begins nor ends, and subsequently filed ANDAs cannot be approved. *Id.*

### 2. *Medicare Amendments*

To curb these abuses, Congress added another round of amendments to the FDCA in the comprehensive Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (the "Medicare Amendments"). Pub.L. No. 108–173, 117 Stat.2066 (2003). The Medicare Amendments established forfeiture provisions to prevent bottlenecking and revised sections of the patent code authorizing declaratory judgment actions by ANDA filers. *Id.* In particular, Congress provided that "the courts of the United States shall, to the extent consistent with the Constitution, have subject matter jurisdiction" in any declaratory judgment action by a generic manufacturer who (1) has filed an ANDA with a paragraph IV certification and (2) was not sued by the NDA holder within the forty-five day statutory period. 35 U.S.C. § 271(e)(5).

### B. *Facts*

#### 1. *Pfizer*

Pfizer markets Zoloft®, the brand name version of setraline hydrochloride approved by the FDA for the treatment of mood and anxiety disorders. Pfizer has listed Zoloft® in the Orange Book, associating it with the '699 patent and U.S. Patent No. 4,356,518 ("the '518 patent"). The '699 patent will expire on September 28, 2010, and the '518 patent will expire on June 30, 2006.

#### 2. *IVAX*

In 1999, Zenith Goldline Pharmaceuticals, Inc., now known as IVAX, filed the first setraline hydrochloride ANDA. IVAX submitted a paragraph IV certification with respect to the '699 patent, *i.e.*, it asserted that the '699 patent was invalid or not infringed by IVAX's product, and a paragraph III certification with respect to the '518 patent, *i.e.*, it asserted that IVAX will not enter the market until the expiration of the '518 patent on June 30, 2006. As the first filer, IVAX was entitled to a 180–day marketing exclusivity period pursuant to 21 U.S.C. § 355(j)(5)(B)(iv). Pfizer responded within forty-five days of receiving notice of the ANDA, initiating a patent infringement action against IVAX in January 2000. Pursuant to 21 U.S.C. § 355(j)(5)(B)(iii), the suit automatically suspended FDA approval of the IVAX ANDA for thirty months. The parties reached a settlement in May 2002 that provided that IVAX would receive a license to the '699 patent and may begin marketing setraline hydrochloride by June 30, 2006.

#### 3. *Apotex*

On October 27, 2003, Apotex filed an ANDA seeking the FDA's approval to market its version of setraline hydrochloride. Like IVAX, Apotex filed a paragraph III certification with respect to the '518 patent and a paragraph IV certification with respect to the '699 patent. Pursuant to the Hatch–Waxman framework, the FDA cannot approve the Apotex

ANDA until 180 days after IVAX enters the market or a court decision decrees the '699 patent invalid or not infringed, whichever is earlier. If neither event occurs, the Apotex ANDA cannot be approved until September 2010, when the last Zoloft-related patent expires. *See* 21 U.S.C. § 355(j)(5)(B)(ii).

#### 4. *Other ANDA Filers*

In addition to IVAX and Apotex, at least six other generic drug manufacturers have filed ANDAs for setraline hydrochloride; Pfizer has initiated suit against none of them. (Myers Decl. ¶ 9). Two of these companies, Teva Pharmaceuticals USA, Inc. and Dr. Reddy's Laboratories, Ltd., filed ANDA-related declaratory judgment actions against Pfizer, as Apotex has done here. (Def.'s Mem. at 7–8). Both cases were dismissed for lack of subject matter jurisdiction. *Teva Pharms. USA, Inc. v. Pfizer Inc.*, No. 03–CV–10167 (RGS), 2003 WL 22888848, at *1 (D.Mass. Dec.8, 2003); *Dr. Reddy's Labs., Ltd. v. Pfizer Inc.*, No. 03–CV–726 (JAP), 2003 WL 21638254, at *7 (D.N.J. July 8, 2003).

#### C. *Procedural History*

Apotex filed its complaint on April 1, 2004. On June 22, 2004, Pfizer moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Pfizer argues that this Court does not have subject matter jurisdiction because of the absence of an actual controversy, as required by the Declaratory Judgment Act. 28 U.S.C. § 2201(a). Apotex contends that there is such a controversy. For the reasons that follow, the motion to dismiss is granted.

### *DISCUSSION*

#### A. *Applicable Law*

##### 1. *Motion to Dismiss Standard*

■ In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), federal courts "need not accept as true contested jurisdictional allegations." *Jarvis v. Cardillo*, No. 98 Civ. 5793(RWS), 1999 WL 187205, at *2 (S.D.N.Y. Apr.5, 1999). Rather, a court may resolve disputed jurisdictional facts by referring to evidence outside the pleadings. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir.2000); *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998). As the party "seeking to invoke the subject matter jurisdiction of the district court," plaintiff bears the burden of demonstrating that there is subject matter jurisdiction in this case. *Scelsa v. City Univ. of New York*, 76 F.3d 37, 40 (2d Cir.1996).

##### 2. *Subject Matter Jurisdiction*

■ Subject matter jurisdiction under the Declaratory Judgment Act requires the existence of an actual case or controversy: "The Declaratory Judgment Act permits declaratory relief only in cases presenting 'actual controversies,' ... a requirement that incorporates into the statute the case or controversy limitation on federal jurisdiction found in Article III of the Constitution." *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir.1996) (citing 28 U.S.C. § 2201(a)).

##### 3. *The Reasonable Apprehension Test*

■ In declaratory judgment actions for patent invalidity or non-infringement, the courts have applied a two-part test to determine whether an "actual controversy" exists:

> There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute

infringement or concrete steps taken with the intent to conduct such activity.

*Fina Research, S.A. v. Baroid Ltd.,* 141 F.3d 1479, 1481 (Fed.Cir.1998). The first prong of this inquiry examines the defendant's conduct, while the second prong focuses on the plaintiff's conduct. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988). This two-part test has become known as the "reasonable apprehension" test.

■ To determine whether there is a reasonable apprehension that the defendant will sue for patent infringement, courts apply an objective test that focuses on the conduct of the defendant and attempts to ascertain whether a defendant has shown an intent to enforce its patent rights. *Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885, 888 (Fed.Cir.1992); *Arrowhead,* 846 F.2d at 736. Such an intent is readily exhibited with express accusations of infringement and threats to bring suit. Explicit threats, however, are not required to create a reasonable apprehension. *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 811 (Fed.Cir.1996). "In light of the subtleties in lawyer language ... the courts have not required an express infringement charge," *Arrowhead,* 846 F.2d at 736, finding instead that "reasonable apprehension ... may be induced by subtler conduct." *EMC Corp.,* 89 F.3d at 811.

In the absence of overt threats, the "totality of the circumstances" must be considered in evaluating whether a reasonable apprehension of infringement litigation exists. *Arrowhead,* 846 F.2d at 736. In other words, the court must look at the full range of the defendant's conduct and determine whether those actions, considered in context, create a reasonable apprehension. *Consac Indus., Inc. v. Nutramax Labs., Inc.,* No. 97 Civ. 1155(SJ), 1998 WL 229255, at *3 (E.D.N.Y. Mar.31, 1998).

### 4. *The Medicare Amendments*

■ Apotex argues that the reasonable apprehension test is "legally irrelevant," contending that it no longer applies because of the Medicare Amendments passed in 2003. (Pl.'s Mem. at 7). Instead, Apotex argues, the Medicare Amendments expressly authorize an ANDA-filer to bring a declaratory judgment action where, as here, a patentee does not file suit within the forty-five day period. (*Id.* at 8) (citing 21 U.S.C. § 355(j)(5)(C)). It also relies on the amendment to the patent code, which provides that federal courts "shall, to the extent consistent with the Constitution, have subject matter jurisdiction" over declaratory judgment actions for a declaration of invalidity or non-infringement brought by ANDA applicants who have made a paragraph IV certification. (*Id.*).

Accordingly, Apotex asks the Court to disregard the reasonable apprehension test, and, instead to employ the Article III case or controversy analysis applied in non-patent cases and in patent cases involving allegations of actual (as opposed to potential) infringement, requiring that "there is (1) an actual or imminent injury-in-fact, (2) that is fairly traceable to the defendant, and (3) is redressible by a favorable decision." (Pls.' Mem. at 12) (citing *Bennett v. Spear,* 520 U.S. 154, 162, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997); *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937); and *Allergan, Inc. v. Alcon Labs., Inc.,* 324 F.3d 1322, 1331 (Fed.Cir.2003)). Apotex argues that the changes made by the Medicare Amendments require a similar analysis for ANDA-related declaratory judgment actions.

The argument is rejected. The Medicare Amendments do not disturb the Federal Circuit's consistent holding that the constitutional limits of an Article III

court's jurisdiction in anticipatory patent infringement declaratory judgment actions are defined by the two-part reasonable apprehension test. *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.,* 363 F.3d 1361 (Fed.Cir.2004); *Arrowhead,* 846 F.2d at 736; *Torpharm, Inc. v. Pfizer, Inc.,* No. Civ. 03–990–SLR, 2004 WL 1465756, at *7 (D.Del. June 28, 2004) (citing Medicare Amendments and holding reasonable apprehension test is " 'consistent with the Constitution' "); *Glaxo Group Ltd. v. Dr. Reddy's Labs., Ltd.,* 325 F.Supp.2d 502, 507–08 (D.N.J.2004). All of these decisions post-date the Medicare Amendments.

The legislative history of the Medicare Amendments supports the continued application of the reasonable apprehension test. The Conference Report accompanying the Medicare Amendments explains plainly, "the conferees do not intend for the courts to modify their application of the requirements under Article III that a declaratory judgment plaintiff must, to the extent required by the Constitution, demonstrate a 'reasonable apprehension' of suit to establish jurisdiction." H.R. Conf. Rep. No. 108–391, at 836 (2003). In response, Apotex points to Congressional testimony reflecting a general intent to eliminate ANDA bottlenecks, arguing that jurisdiction in this case would effectuate that goal. (Pls.' Mem. at 9). While that may be true, it does not show that Congress intended to replace the well-established reasonable apprehension test for declaratory judgment patent cases with the analysis used in non-patent cases.

Accordingly, I apply the two-prong reasonable apprehension test.

## B. *Application*

■ Pfizer does not dispute that the second prong of the reasonable apprehension test has been met. (*See* Def.'s Mem. at 10–20). By filing the ANDA, Apotex committed a "defined act of infringement sufficient to create case or controversy jurisdiction" in patent infringement actions. *Glaxo, Inc. v. Novopharm, Ltd.,* 110 F.3d 1562, 1569 (Fed.Cir.1997). Therefore I address only the first prong— whether Pfizer's conduct gave rise to a reasonable apprehension of suit.

Apotex has not shown that Pfizer created a reasonable apprehension of patent litigation, and thus no actual controversy exists. Therefore this Court does not have subject matter jurisdiction. The Court notes that two District Courts recently reached the same conclusion, in virtually identical cases involving the same patents and products at issue here. *Teva Pharms. USA, Inc. v. Pfizer Inc.,* No. 03–CV–10167 (RGS), 2003 WL 22888848 (D.Mass. Dec.8, 2003); *Dr. Reddy's Labs., Ltd. v. Pfizer Inc.,* No. 03–CV–726 (JAP), 2003 WL 21638254 (D.N.J. July 8, 2003). Likewise, courts in three other similar declaratory judgment cases also dismissed for lack of subject matter jurisdiction. *Torpharm, Inc. v. Pfizer Inc.,* No. Civ. 03–990–SLR, 2004 WL 1465756 (D.Del. June 28, 2004); *Glaxo Group Ltd. v. Dr. Reddy's Labs., Ltd.,* 325 F.Supp.2d 502 (D.N.J.2004). *Mutual Pharm. Co. v. Pfizer Inc.,* 307 F.Supp.2d 88 (D.D.C.2004).

As Pfizer has not explicitly threatened suit (Def.'s Mem. at 15), I consider the totality of the circumstances. *See Arrowhead,* 846 F.2d at 736. Apotex identifies four aspects of Pfizer's conduct that, taken together, allegedly give rise to a reasonable apprehension of suit: (1) Pfizer listed the '699 patent in the Orange Book, (2) Pfizer asserted the '699 patent against IVAX, (3) Pfizer has a history of litigating its patents, and (4) Pfizer has not acknowledged that Apotex's product does not infringe the '699 patent. (Pls.' Mem. at 21–25).

First, Pfizer's listing of the '699 patent in the Orange Book does not contribute to a reasonable apprehension of suit. According to the plain language of the law, an Orange Book listing represents merely that, in certain circumstances, an infringement claim "could" be asserted, but not that one will be asserted. 21 U.S.C. § 355(b)(1). An Orange Book listing imposes no obligation on the patent owner to sue, and does not suggest that a suit is expected or even likely. *Id.; see Torpharm, Inc.,* 2004 WL 1465756, at *9 (finding that an Orange Book listing does not "communicate an intent to sue each and every generic who opts to file an ANDA"). Apotex compares the Orange Book listing to a private letter, noting that reasonable apprehension would exist if Pfizer had sent a letter to Apotex bearing the very same message. (Pls.' Mem. at 22). An Orange Book listing is unlike a private letter and does not carry the same threatening suggestion. An Orange Book listing is directed to the FDA, not any company in particular, and is submitted as a necessary element of the drug application. *See* 21 U.S.C. § 355(a), (b)(1).

Second, Pfizer's suit against IVAX does not contribute to a reasonable apprehension of suit. There was a distinct statutory incentive for Pfizer to sue IVAX: by suing the first filer within forty-five days of notice of the ANDA, Pfizer received an automatic thirty-month delay in the approval of that ANDA pursuant to 21 U.S.C. § 355(j)(5)(B)(iii). There is no similar incentive for suing Apotex. Moreover, Pfizer has not sued any of the other ANDA applicants. (Myers Decl. ¶ 9).

Third, Pfizer's history of litigation, though lengthy, is not sufficiently related to this case to create a reasonable apprehension of suit. In cases where courts have found prior litigation sufficiently threatening, either (1) the defendant referenced that litigation in some communica-

tion to the plaintiff, *Arrowhead,* 846 F.2d at 733; *Ivoclar Vivadent, Inc. v. Hasel,* No. 02–CV–0316E(F), 2003 WL 21730520, at *1 (W.D.N.Y. June 30, 2003), or (2) there was ongoing litigation between the parties over a series of closely related patents involving the same technology. *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953 (Fed.Cir.1987); *Clontech Labs., Inc. v. Life Techs., Inc.,* No. Civ.A. AW–00–1879, 2000 WL 33124811, at *1 (D.Md. Dec.20, 2000); *SmithKline Beecham Corp. v. Zenith Goldline Pharms., Inc.,* No. Civ.A. 00–CV–1393, 2000 WL 963165, at *1 (E.D.Pa. June 28, 2000). Apotex does not claim that Pfizer sent any threatening communication, but rather it relies on the fact that Pfizer has previously asserted its patent rights against other generic drug companies. (Pls.' Mem. at 24). What is missing from Apotex's argument, however, is an explanation as to how setraline hydrochloride is "essentially the same technology involved" in those actions. *See Goodyear Tire,* 824 F.2d at 954. Companies that profit largely from research and development will frequently find themselves involved in patent infringement litigation; what creates a reasonable apprehension of suit in any given case is a relationship between that case and some prior litigation. Apotex has not established such a relation here.

Finally, Apotex asks the Court to consider Pfizer's refusal to acknowledge non-infringement, but Apotex does not explain how this behavior is threatening. (Pls.' Mem. at 25). At most, Pfizer's refusal is ambiguous; it does not affirmatively show an intent to sue.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is granted. The Clerk of

the Court shall enter judgment dismissing the complaint without prejudice and close this case.

SO ORDERED.