BONTERRA AMERICA, INC., Plaintiff,

v.

**Lothar BESTMANN, Defendant.**

**Civ. A. No. 95–633 SSH.**

United States District Court,
District of Columbia.

Nov. 22, 1995.

**5**

Joseph Holland, Ralph A. Mittelberger, Fish & Richardson, Washington, DC, for Defendant.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

Plaintiff BonTerra America ("Bon-Terra") filed this action against defendant Bestmann in March of this year, seeking a declaratory judgment that United States Letters Patent No. 5,338,131 (the " '131 patent") is invalid or unenforceable. Defendant Bestmann owns the '131 patent. Bestmann has moved to dismiss plaintiff's action under Fed.R.Civ.P. 12(b)(6) for lack of subject matter jurisdiction. Upon careful consideration of defendant's motion, plaintiff's opposition thereto, defendant's reply, and the entire record, defendant's motion to dismiss is granted.[1]

*Background Facts*

The United States Patent and Trademark Office (PTO) issued Lothar Bestmann the '131 patent on August 16, 1994. The '131 patent applies to certain forms of fibrous rolls and mats designed to retard erosion and reclaim eroded land mass. Immediately after the '131 patent issued, Bestmann's attorney, Richard Crowley, sent letters to other companies and individuals in the erosion control industry informing those persons of the existence of the '131 patent and offering a nonexclusive license of the '131 patent. (Bestmann has given an exclusive license for the patent to Bestmann Green Systems (Bestmann Green).)

Donald Knezick, the president of Pinelands Nursery, received one of the letters from Crowley. Knezick operates a BonTerra warehouse at Pinelands Nursery, and Knezick also apparently engaged in direct marketing of BonTerra shoreline erosion control products until September 1994. On August 27, 1994, after receiving the Crowley letter informing him of the existence of the Bestmann patent, Knezick wrote to Crowley asking a number of specific questions about the

Morris Kletzkin, Friedlander, Misler, Friedlander, Sloan & Herz, Washington, DC, for Plaintiff.

1. In deciding a motion to dismiss a case for lack of subject matter jurisdiction, the Court may consider evidentiary matters outside the pleadings. *See, e.g., Indium Corp. of America v. Semi–* *Alloys, Inc.,* 781 F.2d 879, 884 (Fed.Cir.1985); *Gordon v. National Youth Work Alliance,* 675 F.2d 356, 362–63 (D.C.Cir.1982) (concurring opinion of Chief Judge Bazelon).

impact of the Bestmann patent on his ability to market and sell certain BonTerra products. On September 6, 1994, Wendi Goldsmith, the President of Bestmann Green, called Knezick and informed him that Crowley would be responding in writing to Knezick's letter.

The parties dispute exactly what transpired during Goldsmith's telephone call to Knezick. Goldsmith has submitted a declaration stating that she did not express any view to Knezick on whether BonTerra erosion control products infringed the Bestmann patent, and that she informed Knezick that he should consult his own attorney to determine whether he was selling any products which infringed the Bestmann patent. Goldsmith also states in her declaration that she did not threaten to sue Pinelands Nursery for patent infringement if Pinelands did not take a license from Bestmann, nor did she suggest that Bestmann or Bestmann Green would sue BonTerra for infringement of the '131 patent. Def.'s Mot. To Dismiss, Ex. C (Decl. of Wendi Goldsmith).

However, after the telephone conversation between Knezick and Goldsmith concluded, Knezick sent a letter to the president of BonTerra stating that Goldsmith "informally" told Knezick that it was the position of Bestmann Green that Knezick "would be in violation of the patent" if he were to sell certain BonTerra shoreline stabilization products. Def.'s Mot. To Dismiss, Ex. B (Knezick letter to Toney Driver, President of BonTerra). Knezick also wrote that Goldsmith "inferred [*sic*] that the sale of any product similar to what is illustrated in the patent for the purpose of shoreline stabilization would also be a violation." *Id.* Knezick concluded that he would "no longer directly market any BonTerra products for shoreline erosion control until the situation is resolved," but that he would continue to oper-

ate the BonTerra warehouse at Pinelands. *Id.*

On September 7, 1994, Crowley responded in writing to Knezick's letter of August 27. Crowley wrote that Knezick's letter "raise[d] a number of factual and legal issues. It is not the responsibility of the patentee to respond to such questions." Crowley then "strongly urged" Knezick to "seek the advice of [his] patent counsel" with respect to the '131 patent and Knezick's activities. Def.'s Mot. To Dismiss, Ex. C (Attachment B to Goldsmith Decl.) On March 31, 1995, plaintiff filed this action for declaratory judgment.[2]

*Analysis*

■ The Declaratory Judgment Act, 28 U.S.C. § 2201 (1994), provides that federal courts may issue declaratory judgments only in cases which present an "actual controversy" between the parties involved:

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The Federal Circuit has developed a two-part test to determine whether an actual controversy exists in an action involving a patent dispute. A court may exercise jurisdiction over a declaratory judgment action (1) if the conduct of the defendant patentee has "created on the part of the declaratory plaintiff a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question," and (2) when the declaratory plaintiff has "actually produced the accused device" or has "prepared to produce such a device." *Indium Corp. of America v. Semi-*

---

2. One side note is necessary here: prior to the issuance of the '131 patent, and prior to the filing of this action, Bestmann and BonTerra had once before been adverse parties in a lawsuit. In September 1993, BonTerra filed an action against Bestmann in the United States District Court for the District of Massachusetts, alleging, *inter alia,* that Bestmann had committed anti-

trust violations and had falsely represented that Bestmann possessed a United States patent for its erosion control products when in fact it did not. Pl.'s Opp. to Def.'s Mot. To Dismiss, Aff. of Frank J. Dykas ("Dykas Aff."), Ex. A. Bestmann denied any wrongdoing and subsequently settled the 1993 action. Dykas Aff., Ex. F.

*Alloys, Inc.*, 781 F.2d 879, 883 (Fed.Cir.1985) (quoting *Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1398–99 (Fed.Cir.1984)). *See also BP Chemicals, Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed.Cir.1993). This test is an objective one; the declaratory plaintiff must have a reasonable apprehension of suit for infringement at the time it files its suit for declaratory judgment. *Id.* "A purely subjective apprehension of an infringement suit is insufficient to satisfy the actual controversy requirement." *Id.*

 The declaratory plaintiff has the burden of establishing by a preponderance of the evidence that an actual controversy exists between the parties to the action. *BP Chemicals Ltd. v. Union Carbide Corp.*, 757 F.Supp. 303, 305 (S.D.N.Y.1991) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)), *aff'd*, 4 F.3d 975 (Fed.Cir.1993). Plaintiff has failed to meet this burden; the Court therefore finds that this case should be dismissed for lack of subject matter jurisdiction.

BonTerra has met the second prong of the two-part test for determining whether an "actual controversy" exists between the parties: BonTerra has produced and continues to produce a potentially infringing product. BonTerra falls short, however, of meeting the requirements in the first prong of the test for determining whether an actual controversy exists: it has not shown by a preponderance of the evidence that it has a reasonable apprehension that Bestmann will file an infringement suit against BonTerra.

 Bestmann was issued the '131 patent in August 1994. Since that patent was issued, three relevant communications have occurred. First, Bestmann's attorney sent out a letter to people involved in the erosion control industry, informing them that the '131 patent existed and advising them that they could seek a non-exclusive license from Bestmann if they so desired. The offer of a patent license, in and of itself, does not suffice to create an actual controversy. *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed.Cir. 1995).

Second, Donald Knezick, a customer of and/or marketing representative of BonTerra, had a conversation with Wendi Goldsmith, the president of Bestmann Green, in which Goldsmith allegedly stated that Knezick "would be in violation of the ['131] patent" if he continued to sell certain BonTerra erosion control products, and in which Goldsmith allegedly "inferred" (the Court assumes the writer meant to use "implied") that "the sale of any product similar to what is illustrated in the patent ... would also be a violation." Goldsmith denies making these statements and denies making any threats to sue Knezick or BonTerra itself for patent infringement. Third, following the telephone conversation between Goldsmith and Knezick, Bestmann's attorney, Crowley, sent Knezick a letter stating that Knezick had raised legal questions that the patentee had no responsibility to answer, and "strongly urg[ing]" Knezick to consult his attorney with such questions.

 Even assuming that Knezick's recollection and representations are accurate, which Goldsmith disputes, the statements allegedly made by Goldsmith and the follow-up letter from Crowley do not suffice to establish that BonTerra possessed a reasonable apprehension of a patent infringement suit. Defendant's conduct "must be such as to indicate defendant's intent to enforce its patent." *Arrowhead Indus. Water, Inc., v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed.Cir. 1988); *see also Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888 (Fed.Cir.1992). Where, as here, no express charges of infringement were made to plaintiff, the Court must look at the totality of circumstances to determine whether plaintiff reasonably feared prior to instituting its suit for declaratory judgment that defendant would institute a suit for infringement. *See Shell Oil Co.*, 970 F.2d at 888.

In this case, the totality of circumstances amounts to (1) a letter offering a nonexclusive license arrangement, which, as noted above, in itself does not create an "actual controversy"; (2) statements allegedly made to Knezick, an individual not a party to this action, that certain of plaintiff's products were in violation of the '131 patent; and (3) a

letter to Knezick from Bestmann's attorney in which the attorney declined to answer legal questions about the '131 patent and directed Knezick to seek counsel from an attorney regarding such questions.[3] No allegations have been made by BonTerra that Bestmann has contacted BonTerra and informed it that its products are in violation of the patent. No allegations have been made that Bestmann has conveyed to BonTerra either expressly or implicitly that it intends to sue to enforce its patent, and no allegations have been made that Bestmann has ever before sued another entity for infringement. While "the requirement that the declaratory plaintiff be under a reasonable apprehension of suit does not require that the patentee be poised on the courthouse steps," *Phillips Plastics*, 57 F.3d at 1054, plaintiff must show more than this to establish that it reasonably fears suit for infringement. Defendant's conduct prior to the filing of this action does not suffice to indicate its intent to enforce its patent against BonTerra.

BonTerra contends that defendant's conduct prior to the issuance of the '131 patent is relevant and compelling evidence of Bestmann's intent to sue BonTerra to protect its interest in the '131 patent. BonTerra has submitted as exhibits in this case certain affidavits submitted in support of its 1993 litigation against Bestmann to support its contention that Bestmann presently intends to sue BonTerra. *See, e.g.,* Dykas Aff., Ex. D (1993 Aff. of Thomas Weed). These affidavits (and the statements allegedly attributable to Bestmann or his agent) were made well prior to the issuance of the '131 patent, and their utility is quite diminished as a result. The Court is of the opinion that defendant's conduct after the issuance of the patent should carry the far greater weight in its analysis than statements allegedly made months, if not years, prior even to the issuance of the patent.

Accordingly, because the Court finds that plaintiff has failed to prove by a preponderance of the evidence that it reasonably fears a suit for infringement, plaintiff's action for

declaratory judgment is dismissed for lack of subject matter jurisdiction.

SO ORDERED.

---

**3.** The fact that Knezick apparently curtailed his relationship with BonTerra after his conversation with Goldsmith is not of much weight. Knezick's decision to avoid any possible risk of suit

for infringement does not serve to create in BonTerra a reasonable fear that Bestmann would sue BonTerra for infringement.