STUDEX CORPORATION, Plaintiff,

v.

**BLOMDAHL MEDICAL INNOVATION AB, Defendant.**

No. 02–2345 (RJL).

United States District Court, District of Columbia.

Sept. 18, 2004.

**4**

Charles F. Schill, Mary Cynthia Atchley Jester, Foley & Lardner, Washington, DC, for Plaintiff.

Quentin R. Corrie, Birch Steward Kolasch & Birch, LLP, Falls Church, VA, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court is the defendant's Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. The plaintiff seeks a declaratory judgment of the invalidity, unenforceability, and noninfringement by the plaintiff of the defendant's U.S. patent. Upon consideration of the defendant's Motion to Dismiss, the plaintiff's opposition, and the entire record herein, the Court GRANTS the defendant's Motion to Dismiss and enters judgment for the defendant.

## BACKGROUND

Plaintiff Studex Corporation ("Studex") is a California-based corporation that manufactures and sells an earpiercing system ("System 75") in the United States and abroad. Compl. ¶¶ 3, 7.[1] Since mid–1999, Studex has sold System 75 in Sweden through its Swedish distributor, Sargenta Ädelmetall AB ("Sargenta"). Def.'s Mot. to Dismiss, Ex. 5 ¶ 2. Defendant Blomdahl Medical Innovation AB ("Blomdahl") is a small family-controlled Swedish company dealing in medical technology whose largest product is a method and apparatus for earpiercing. Compl. ¶ 4; Def.'s Mot. to Dismiss, Ex. 5, Subexhibit ("Subex.") J at 4. Blomdahl has registered U.S., European, and Swedish patents on its method and

---

1. The plaintiff originally filed its complaint in the U.S. District Court for the Central District of California.

apparatus for earpiercing.[2] Compl. ¶ 5; Def.'s Mot. to Dismiss, Ex. 5, Subex. J at 4.

Studex's declaratory judgment action arises out of a dispute over Studex's marketing and distribution of System 75 in Sweden through two Swedish distributors. In July 2001, Blomdahl initiated an action in Swedan against Studex's Swedish distributors, Sargenta and SPS, for infringement of Blomdahl's European patent. On December 12, 2001, Blomdahl and Sargenta reached a settlement in which the Stockholm City Court entered judgment against Sargenta for infringement of Blomdahl's Swedish patent and awarded damages to Blomdahl. Def.'s Mot. to Dismiss, Ex. 3 ¶¶ 6–7; Def.'s Mot. to Dismiss, Ex. 4, Subex. A at 5. On June 26, 2003, the Stockholm City Court dismissed Blomdahl's infringement claim against SPS and SPS's claim of the invalidity of Blomdahl's Swedish patent; as no appeals were taken, the decision became final and concluded the Swedish litigation. Def.'s Mot. to Dismiss, Ex. 3 ¶¶ 3–5, Ex. 4, Subex. A at 2–3.

On February 1, 2002, Studex filed a declaratory judgment action against Blomdahl in the U.S. District Court for the Central District of California seeking a declaratory judgment that Blomdahl's U.S. patent for an earpiercing method and apparatus was invalid, unenforceable, and not infringed by Studex.[3] Compl. ¶ 2. On November 18, 2002, the California district court granted Blomdahl's motion to transfer to the U.S. District Court for the District of Columbia because the California court lacked personal jurisdiction over Blomdahl. *See* Nov. 18 Order.[4] On October 31, 2003, Blomdahl submitted its Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

## STANDARD OF REVIEW

District courts are courts of limited jurisdiction and "possess only that power authorized by [the] Constitution and [by] statute." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). It is

---

**2.** Blomdahl has registered the following patents: U.S. Patent No. 5,499,993 ("U.S.patent") titled "Method and Apparatus for Piercing Ears," issued March 19, 1996 (Compl. ¶ 5; Def.'s Mot. to Dismiss, Ex.5, Subex. A at 1); (2) European Patent No. 0559637 ("European patent") titled "Method and Apparatus for Piercing Ears," which is based on application # 90916996.3, and is registered in Sweden as SE–559637–T3 ("Swedish Patent") (Compl. ¶ 5; Def.'s Mot. to Dismiss, Ex. 5, Subexs. B at 1 & J at 4). Studex alleges both U.S. and European patents are based on a common international patent application, PCT/EP90/02033, filed on November 27, 1990, and published with International Publication No. WO 92/09218 (Compl. ¶ 5; Def.'s Mot. to Dismiss, Ex. 5, Subex. C at 1).

**3.** At this time, the Court is concerned only with the issue of whether Studex has satisfied the "actual controversy" requirement of the Declaratory Judgment Act (28 U.S.C. § 2201(a)) and will not address the validity of the U.S. patent.

**4.** In granting the motion to transfer, the California district court relied on 35 U.S.C. § 293 (emphasis added), which states:

Every patentee not residing in the United States may file in the Patent and Trademark Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder. If the person designated cannot be found at the address given in the last designation, *or if no person has been designated, the United States District Court for the District of Columbia shall have jurisdiction* and summons shall be served by publication or otherwise as the court directs. The court shall have the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court.

the plaintiff's burden of persuasion to establish the existence of subject matter jurisdiction by a preponderance of the evidence. *Thompson v. Capitol Police Bd.*, 120 F.Supp.2d 78, 81 (D.D.C.2000). In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), "the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *Id.* Where a motion to dismiss presents a dispute over the factual basis of the Court's subject matter jurisdiction, the Court "may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant" and therefore "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Rep. of Angola*, 216 F.3d 36, 40 (D.C.Cir. 2000); *In re Swine Flu Immunization Prods. Liability Litig.*, 880 F.2d 1439, 1442–43 (D.C.Cir.1989).[5]

## ANALYSIS

■ The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A court has subject matter jurisdiction to issue a declaratory judgment only if an "actual controversy" exists between the parties regarding the subject on which declaratory relief is sought. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41, 57 S.Ct.

461, 81 L.Ed. 617 (1937); *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed.Cir. 1992); *Fed. Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 963–64 (D.C.Cir. 1995).

■ In declaratory judgment actions involving patents, courts use a two-pronged test to determine whether an actual case or controversy exists: (1) the defendant's conduct must have created in the plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the infringing activity; and (2) the plaintiff must have actually engaged in the alleged infringing activity or prepared to engage in the infringing activity. *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955 (Fed.Cir.1987); *see also BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed.Cir.1993). As Studex has satisfied the second prong of this test,[6] the dispositive issue before the Court is whether Studex had a reasonable apprehension of being sued by Blomdahl for infringing Blomdahl's U.S. patent.

■ The "reasonable apprehension" test is an objective test applied to the facts existing when the complaint is filed. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed.Cir.1988). The plaintiff bears the burden of proof by a preponderance of the evidence that it has a "reasonable apprehension" of facing a patent infringement suit. *Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1399 (Fed.Cir.1984); *Shell Oil*, 970 F.2d at 888. The Court must first look for express charges of infringement, but if none are present, the Court may then consider the "totality of the circumstances" to determine the reasonableness of the plaintiff's

---

**5.** Rule 12(b) of the Federal Rules of Procedure otherwise requires that a motion to dismiss be considered according to summary judgment standard if the movant submit matters outside of the pleadings that are not excluded by the Court. Fed.R.Civ.P. 12(b),

56; *see also IMS v. Alvarez*, 129 F.3d 618, 619 n. 1 (D.C.Cir.1997).

**6.** Studex has produced System 75, a product which potentially infringes Blomdahl's U.S. patent. Compl. ¶ 7; Pl.'s Opp. 5.

apprehension. *Shell Oil,* 970 F.2d at 888. Although ·Studex asserts that Blomdahl's letter on February 24, 2000 constituted an express threat to sue Studex in a U.S. district court for infringing Blomdahl's U.S. patent, neither a fair reading of the language on its face, nor a fair reading under· the totality of the circumstances, supports this interpretation.

The "totality of the · circumstances" in this case includes correspondence and negotiations between the parties regarding the patent, previous actions enforcing the patent in question, enforcement actions against subsidiary or partner companies, and in some circumstances, foreign litigation enforcing the foreign equivalent of the U.S. patent. *See Shell Oil,* 970 F.2d at 888–89 (using contents of letters and meet-ings between parties to determine if defen-dant's conduct rose to the level of a threat of an infringement suit); *see also EMC Corp. v. Norand Corp.,* 89 F.3d 807, 812–13 (Fed.Cir.1996). If the defendant's con-duct is "such as to indicate [the] defen-dant's intent to enforce its patent," the Court may find that plaintiff had a reason-able apprehension ·of litigation. *Bonterra Am., Inc. v. Bestmann,* 907 F.Supp. 4, 7 (D.D.C.1995) (quoting *Arrowhead,* 846 F.2d at 736).

Studex alleges a reasonable ap-prehension of litigation based on: (1) the correspondence between Blomdahl and Studex; (2) Blomdahl's Swedish lawsuit against the Swedish distributors of Stu-dex's System 75 for infringement of Blomdahl's European patent; and (3) Blomdahl's registration of its U.S. patent containing claims allegedly identical to those· in its European patent. Since the mere existence of a U.S. patent is insuffi-cient to create a reasonable apprehension of litigation, *see Arrowhead,* 846 F.2d at 736, this Court will only consider the im-pact of the Blomdahl–Studex correspon-dence and Blomdahl's Swedish lawsuit in assessing the plaintiff's apprehension of litigation.[7]

## A. *Blomdahl–Studex Correspondence*

Not surprisingly, the parties discern Blomdahl's intentions differently based on their review of the Blomdahl–Studex cor-respondence. Blomdahl asserts that its correspondence with Studex dealt only with Blomdahl's intention to enforce its European patent rights in Sweden. Stu-dex, however, alleges that in its February 24, 2000 letter to Cislo, Blomdahl threat-ened to sue Studex in the U.S.: "If we do not have your substantial answer before [March 10, 2000], we have to file a writ with the District Court against you and [Sargenta] for patent infringement in Swe-den." Def.'s Mot. to Dismiss, Ex. 5, Su-bex. F. For the following reasons, howev-er, the Court finds that this sentence, when read in the overall context of the letter and the correspondence, does not support Studex's contention.

First, the subject line of the letter re-ferred explicitly to Blomdahl's European patent, not its U.S. patent. Second, the

---

**7.** Studex suggests that the mere existence of the U.S. version of the Swedish patent suffices to create a reasonable apprehension of litiga-tion in the U.S. Pl.'s Opp. 2. However, a plaintiff seeking declaratory relief has no ba-sis for a reasonable apprehension of infringe-ment litigation against a defendant who has done nothing more than obtain a· patent. *Ar-rowhead,* 846 F.2d at 736. While Blomdahl has held a U.S. patent on its earpiercing method and apparatus since 1996, Studex has introduced no evidence of prior litigation by Blomdahl to enforce its U.S. patent rights against either Studex or· other companies. Given the principle that a "declaratory judg-ment action should not be used to force un-wanted litigation on 'quiescent patent own-ers,'" the mere existence of Blomdahl's U.S. patent is not sufficient to sustain Studex's claim of a reasonable apprehension of in-fringement litigation. *EMC Corp.,* 89 F.3d at 812.

letter was written in response to Studex's December 30, 1999 letter proposing a possible business arrangement to avoid Blomdahl's intended litigation of its European patent rights in Sweden and Europe. Moreover, Studex initiated the correspondence between Studex and Blomdahl, as opposed to Blomdahl making assertive contact with Studex.[8] Finally, given the imprecision in the translation process, the reference to filing a writ with the "district court" appears to mean the writ would be filed in the Stockholm City Court.[9] Taken as a whole, the February 24, 2000 letter appears to indicate, at most, that Blomdahl might file a suit against Studex in a Swedish court for infringement of Blomdahl's European patent, not that there would be any forthcoming litigation in a U.S. district court for infringement of Blomdahl's U.S. patent.

The Court also finds that an objective reading of other correspondence indicates no clear intention on Blomdahl's part to sue Studex in a U.S. court to enforce its U.S. patent rights. Instead, a reference in the August 28, 2000 letter to possible litigation in countries where Blomdahl's patent is valid appears to refer only to other European countries, where the Swedish

patent would be relevant because of its derivation from the European patent application, and not to the U.S.

**B.** *Blomdahl's Swedish Lawsuit against SPS*

Studex also relies on Blomdahl's Swedish patent enforcement action against Studex's Swedish distributor to support its claim that it feared being sued for infringement of Blomdahl's U.S. patent. Blomdahl asserts that its Swedish lawsuit against SPS gave Studex no reason to fear litigation in the U.S. because: (1) Blomdahl did not name Studex in the Swedish lawsuit, and (2) there was no evidence of the alleged crucial relationship between Studex and SPS. Studex cites three district court cases to support its contention that Blomdahl's Swedish patent action against a related company sufficed to create a reasonable apprehension of U.S. litigation. *See* Pl. Opp. at 6–9.

While foreign litigation can be a significant factor in creating a reasonable apprehension of litigation in the U.S., the specifics of the foreign litigation offered as evidence must be examined by the Court on a case-by-case basis.[10] Because Blom-

---

**8.** In *Shell Oil*, the Court gave great weight to the fact that the declaratory plaintiff initiated the correspondence with the defendant, and that the defendant "made no assertive contact concerning the patent." 970 F.2d at 889. Studex has offered no evidence showing that Blomdahl or Albihns contacted Studex or Cislo prior to the February 24, 2000, letter in response to Cislo's December 30, 1999, letter.

**9.** Gustav Bergqvist, the Albihns attorney who sent the February 24, 2000 letter to Cislo, asserted that "filing 'a writ with the District Court against [Studex] and [Sargenta] for patent infringement' refers to an enforcement action concerning European Patent No. 0 559 637 in Sweden." Def.'s Mot. to Dismiss, Ex. 6 ¶ 6. In the November 24, 2003 motions hearing, Studex's counsel focused on the use of "District Court" instead of "Stockholm City Court." Mot. Hearing Tr. at 11:22–12:4.

Again, the Court thinks counsel ignores the likely possibility that imprecise translation may have accounted for the use of "District Court" instead of "City Court."

**10.** Courts have accorded varying weights to lawsuits, or threats of lawsuits in foreign forums on corresponding foreign patents, for the purposes of satisfying the reasonable apprehension prong. *See Dr. Beck & Co. v. Gen. Elec. Co.*, 210 F.Supp. 86, 92 (S.D.N.Y.1962), *aff'd*, 317 F.2d 538 (2d Cir.1963) (holding that the threat of a suit on a U.S. patent cannot be inferred from an actual suit on a corresponding foreign patent); *but see Electro Med. Sys. S.A. v. Cooper Lasersonics, Inc.*, 617 F.Supp. 1036, 1038 (N.D.Ill.1985) ("[E]xistence of prior infringement suits in foreign forums based on the corresponding foreign patents and against the [plaintiff's] products at issue here is a sufficient basis for reasonable apprehen-

dahl sued only SPS, and not Studex, in Sweden, and because the relationship between SPS and Studex is unclear, the Court finds that Studex has failed to prove that Blomdahl's Swedish lawsuit caused it to have a *reasonable* apprehension of infringement litigation in the U.S. for violation of the U.S. patent. Thus, in essence, the evidence offered by Studex shows only Blomdahl's willingness and intention of protecting its European patent rights in Sweden, rather than its intention of initiating litigation in the U.S. Since, an actual controversy does not exist to support Studex's declaratory judgment action, this Court must dismiss this case for lack of subject matter jurisdiction.

### ORDER

For the reasons set forth above, it is this 18th day of September, 2004 hereby

**ORDERED** that the defendant's Motion to Dismiss [# 33] is **GRANTED;** and it is further

**ORDERED** that the plaintiff's complaint be dismissed with prejudice.

**SO ORDERED.**

sion of identical suits in the United States on [plaintiff's] products."). Given the lack of definitive Federal Circuit precedent on the issue, this Court agrees with the view expressed in *Teva Pharmaceuticals USA, Inc. v.*

*Abbott Laboratories,* 301 F.Supp.2d 819, 822 (N.D.Ill.2004), that "foreign litigation, while not dispositive of a reasonable apprehension of suit in the United States, is one factor to be considered in the analysis."