# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

EPOS TECHNOLOGY LTD.   :
          :
v.          : Civil Action: WMN[1]-07-0416
          :
PEGASUS TECHNOLOGIES LTD. :

## MEMORANDUM

Before the Court is Defendant's motion to dismiss, or in the alternative, for a more definite statement.  Paper No. 17. The motion is fully briefed.  Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion will be denied.

Plaintiff is an Israeli technology company that, since its inception in 2003, has worked to develop advanced digital positioning technology.  Opp'n, Decl. of Oded Turbahn (Turbahn Decl.) ¶ 2.  Recently, Plaintiff developed two products which allow a person to take notes with a wireless digital pen that then appear in handwritten or typewritten form on a computer. Id. ¶ 3.  Plaintiff alleges, and for the purposes of this motion Defendant does not submit any challenging evidence, Reply at 2 n.1, that Plaintiff has been preparing the United States' market

---

[1] This case was reassigned on June 19, 2009, from Judge Richard W. Roberts to the undersigned as a visiting judge from the United States District Court for the District of Maryland sitting by designation.

for its product since 2006.  Plaintiff has discussed the digital pen in print and television interviews in the United States and in 2007, Plaintiff sent employees to a computer electronics show in Las Vegas where they demonstrated the digital pen and handed out sample pens.  Id. ¶ 10-18.  In all, Plaintiff alleges that its employees have made approximately ten trips to the United States to market the pen.  Id. ¶ 14.

Defendant also develops and markets digital pens.  Id. ¶ 8. On December 31, 2006, Defendant, through its counsel, sent a letter to Plaintiff and several of Plaintiff's investors stating that it was Defendant's belief that Plaintiff's "ultrasonic digital pen product . . . infringes one or more claims of [Defendant's patents]."[2]  Compl., Ex. E.  The letter requested that Plaintiff "forbear from making, using and/or selling the infringing product" and stated that Defendant "is determined to vigorously enforce its intellectual property and will weigh all its legal options."  Id.  In addition to sending the letter to several of Plaintiff's investors, Defendant has told a number of Plaintiff's investors, customers and potential business partners that Plaintiff is infringing Defendant's patents and that Defendant intends to sue Plaintiff.  Turbahn Decl. ¶¶ 21-22, 24; Opp'n, Decl. of Yoav Hoshen (Hoshen Decl.) ¶¶ 2-4.

---

[2] In particular, the patents at issue are U.S. Patent Nos. 6,392,330, 6,724,371, 6,841,742, and 6,326,565 and will be referred to hereafter as "Defendant's Patents."

2

Plaintiff alleges that it had intended its digital pen to be on the United States' market in the first half of 2007, but that Defendant's accusations resulted in Plaintiff's deals closing more slowly (or not at all), and thus, at the time briefing on this motion was submitted,[3] Plaintiff's new expectation was that the pen would not be on the market in the United States until the Fall of 2007. In order to go forward with their planned release, Plaintiff filed this action under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), and asks the Court to declare Defendant's Patents to be invalid.

In moving for dismissal, Defendant argues that this Court lacks subject-matter jurisdiction and that the Complaint should be dismissed under Fed. Rule Civ. P. 12(b)(1). On such a motion, "the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." Mutual Pharm. Co., Inc. v. Pfizer Inc., 307 F. Supp. 2d 88, 91-92 (D.D.C. 2004) (internal citations omitted). In ruling on a motion under Fed. R. Civ. P 12(b)(1), the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but where the motion to dismiss concerns a dispute over the facts alleged to establish

---

[3] This motion became ripe on July 24, 2007. No substantive motions have since been submitted. Accordingly, this Court will hold a telephone status conference on August 12, 2009, at 9:45 AM, to be initiated by Plaintiff's counsel.

3

subject matter jurisdiction, the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant.  Citizen Elect. Co., Ltd. v. Osram GmbH, 377 F. Supp. 2d 149, 152 (D.D.C. 2005) (internal quotations omitted).  Instead, the court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss."  Id.

Defendant alleges that the Court lacks subject-matter jurisdiction because no justiciable case or controversy exists under the Declaratory Judgment Act.  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. §2201(a).  The requirement that there be a "case of actual controversy" has been interpreted to refer "to the type of 'Cases' and 'Controversies' that are justiciable under Article III."  Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (internal citations omitted).  Until recently, the Federal Circuit employed a two-part test to determine the existence of a sufficient "case or controversy": (1) whether conduct by the patentee creates a reasonable

4

apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit; and (2) whether conduct by the declaratory judgment plaintiff potentially constitutes infringing activity or demonstrates concrete steps taken with the intent to conduct such activity.  SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1379 (Fed. Cir. 2007).

In 2007, however, the Supreme Court rejected the Federal Circuit's "reasonable apprehension test" in MedImmune, 549 U.S. at 132, n. 11.  The specific question the Court considered in that case was whether Article III and the Declaratory Judgment Act require "a patent licensee to terminate or breach its license agreement before it can seek a declaratory judgment that the underlying patent is invalid, unenforceable, or not infringed."  Id. at 120-21.  MedImmune was a drug manufacturer that entered into a licensing agreement with a patentee, Genentech, allowing it to sell products the sale of which would otherwise infringe on one or more claims of Genentech's patents. Id. at 121.  The Court held that subject matter jurisdiction existed despite the fact that "the continuation of royalty payments [by MedImmune] makes what would otherwise be an imminent threat at least remote, if not inexistent."  Id. at 128.

In coming to this conclusion, the Court specifically analyzed and rejected the Federal Circuit's "reasonable

5

apprehension of suit" test and stated that "[t]he rule that a plaintiff must destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business, before seeking a declaration of its actively contested legal rights finds no support in Article III." Id. at 134. More generally, the Supreme Court reiterated that in patent cases, as in all other cases, the general rules regarding Article III and Declaratory Judgment Act jurisdiction apply. The Court stated that "[t]he dilemma posed . . . [by] the choice between abandoning his rights or risking prosecution is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" Id. at 129 (quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 152 (1967)).

Declaratory judgment jurisdiction in patent cases thus requires that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; "real and substantial"; and "admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id. at 127 (internal quotation omitted). In short, the question "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

6

judgment." Id. (internal quotations omitted). Since MedImmune, the Federal Circuit has held that a substantial controversy exists "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license." SanDisk, 480 F.3d at 1381.

Defendant alleges that there is no case or controversy in the present matter because "[t]he allegedly non-infringing products have not been specifically identified, and there is no allegation that the design of the allegedly non-infringing products has been finalized, or that they are being manufactured in or being exported to the United States." Mot. at 9. Thus, Defendant argues, any declaratory judgment regarding Defendant's Patents would amount to no more than an advisory opinion, based on a set of hypothetical facts.

Defendant's challenge is defective as a matter of law. Following Defendant's argument to its logical conclusion, Plaintiff could only challenge the validity and enforceability of its digital pen by selling the allegedly infringing pen and thereby making itself a possible infringer. As noted above, however, both the Supreme Court and the Court of Appeals for the Federal Circuit have reaffirmed that a potential infringer need

7

not force itself into the position of becoming an infringer before bringing an action under the Declaratory Judgment Act.

A declaratory judgment plaintiff need only show "under 'all the circumstances' an actual or imminent injury caused by the defendant that can be redressed by judicial relief and that is of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Teva Pharm. USA, Inc. v. Novartis Pharm. Corp., 482 F.3d 1330, 1338 (Fed. Cir. 2007). Plaintiff has met these requirements. Plaintiff has alleged an actual and imminent injury by Defendant. As noted above, Plaintiff alleges that Defendant's accusations regarding possible infringement by Plaintiff's digital pen have caused investor relationships to sour and resulted in Plaintiff's inability to release its new product into the United States' market. Additionally, the injury alleged by Plaintiff is immediate and real. Plaintiff alleges that it had planned to release the pen in early 2007, but because of actions taken by Defendant, it has had to push that date back.

Defendant responds that because Plaintiff has changed its intended release date, the potentially infringing act of selling the pen in the United States is not imminent. In support of this argument, Defendant likens Plaintiff's situation to that of the declaratory judgment plaintiff in Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340 (Fed. Cir. 2007). In that case,

8

Benitec sued Nucleonics for infringing Benitec's gene-therapy patent.  Id. at 1342.  Nucleonic initially moved to dismiss on the basis that it was years away from introducing any infringing gene-therapy drug products, but eventually amended its answer to include a counterclaim seeking a declaration that the patent was invalid and unenforceable.  Id. at 1342-43.  After Benitec dismissed its own complaint in light of an unfavorable Supreme Court decision, the district court dismissed Nucleonic's counterclaim for lack of jurisdiction and the Federal Circuit affirmed.  Id. at 1343.  In its opinion, the Federal Circuit noted that the parties agreed that Nucleonic's activities related to human gene-therapy drug treatment[4] could not be considered infringing unless and until Nucleonics filed a new drug application (NDA) with the Food and Drug Administration (FDA).  Id. at 1346.  Nucleonic did not anticipate filing an NDA, however until "at least 2010-12, if ever," and its current activities consisted entirely of developing and submitting (unidentified) preliminary information to the FDA.  Id.  Such circumstances, the Federal Circuit found, did not "prove the immediacy and reality required for a declaratory judgment."

---

[4] The Court also discussed Nucleonic's activities related to animal gene-therapy drug treatment in a separate portion of the opinion.

9

Although Plaintiff, at the time of briefing, has not yet entered the United States market, it is clear that Plaintiff's situation is markedly different from that of Nucleonic. While Nucleonic admitted that there was a possibility that it would never file an NDA, and therefore, a possibility it would never participate in the allegedly infringing activity, Plaintiff has announced its intention to enter the United States market as soon as possible. Additionally, Plaintiff alleges that the reason it has not yet entered the United States market is because of the activity of Defendant – the very activity Plaintiff's declaratory judgment complaint attempts to remedy. Accordingly, this Court finds that Plaintiff's Complaint does present an actual case or controversy.

Defendant next argues that, even if the Court finds an actual case or controversy, it should decline to exercise declaratory judgment jurisdiction. The Declaratory Judgment Act allows, but does not mandate, a court to "declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a). "This text has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." MedImmune, 549 U.S. at 136. District courts are to consider any "equitable, prudential, and policy arguments in favor of such discretionary dismissal." Id. Despite quoting this language in its motion

10

and reply, Defendant does not provide any such argument. Instead, Defendant simply restates its original argument that the fact that Plaintiff has not yet sold its product in the United States means that declaratory judgment jurisdiction does not exist.  As stated above, this Court disagrees and, in the absence of grounds to do otherwise, will exercise its discretionary declaratory judgment jurisdiction.[5]

Finally, Defendant asks that, if its motion to dismiss is denied, the Court require Plaintiff to make a more definite statement pursuant to Fed. R. Civ. P. 12(e).  A motion for a more definite statement is "typically disfavored by the courts," Rahman v. Johanns, 501 F. Supp. 2d 8, 19 (D.D.C. 2007), and properly filed only "where a plaintiff's complaint is 'unintelligab[le],' not where a complaint suffers for 'lack of detail.'"  Lindsey v. United States, No. 05-1761, 2009 WL 1110900, at *3 (D.D.C. April 27, 2009) (quoting Towers Tenant Ass'n v. Towers Ltd. P'ship, 563 F. Supp. 566, 569 (D.D.C. 1983)).  Courts have found that if the information sought by the

---

[5] Defendant also alleges that Plaintiff has failed to state a claim upon which relief can be granted.  Defendant argues that Plaintiff "has failed to allege any infringing activity, and has failed to allege any imminent infringing activity in the United States[,]" and has thus, failed to state a claim.  Despite the use of a different Federal Rule, Defendant's argument for dismissal under Fed. R. Civ. P. 12(b)(6) is exactly the same as its argument under 12(b)(1).  Having determined that this argument fails and that the Court does in fact possess subject matter jurisdiction over Plaintiff's claims, the Court will also deny the motion under rule 12(b)(6).

11

motion is obtainable through discovery, the motion should be denied.  See, e.g., Towers (denying motion for a more definite statement because details such as "dates, times, names and places" are "the central object of discovery, and need not be pleaded").

Plaintiff's pleading is not confusing and does not violate Fed. R. Civ. P. 8(a)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief."  The counts at issue in this case revolve around the Plaintiff's allegation that it does not directly or indirectly infringe any of the four patents at issue and that those patents are invalid and unenforceable.  Compl. ¶ 23-46.  Given that Defendant has sent a letter stating that it believes that Plaintiff's digital pen infringes the patents at issue, it is safe to say that Defendant can deny these claims in its answer without prejudice to itself.  Specific facts are not necessary in a Complaint, instead, the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007).  In this case, any additional details can be revealed though discovery.

For the foregoing reasons, Defendant's motion to dismiss, or in the alternative, for a more definite statement, will be denied.  A separate order will issue.

/s/
William M. Nickerson
United States District Judge

Dated: July 20, 2009